UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDI KOLDEWIJN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

Case No. 08-cv-1765-RAJ-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Brandi Koldewijn appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff is a 40-year-old woman who completed high school and two years of college. Administrative Record ("AR") at 100, 114. Her past work experience includes employment as an account executive, customer service representative, cashier, secretary, administrative

assistant and loan officer. AR at 109, 121. Plaintiff was last gainfully employed in 2003. AR at 101. Plaintiff asserts that she is disabled due to Guillain-Barre syndrome, depression, neuropathic pain, hypertension, numbness and fatigue. AR at 108. She asserts an onset date of April 1, 2004. AR at 100, 119.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 93, 96. Plaintiff requested a hearing, which took place on April 22, 2008. AR at 899. On July 17, 2008, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-29.

On November 6, 2008, after reviewing additional evidence, the Appeals Council denied Plaintiff's request for review, AR at 6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 11, 2008, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

### III. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V. EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R.

§§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE - 4

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI. DECISION BELOW

On July 17, 2008, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date.

3. The claimant has the following severe impairments: Guillain-Barre Syndrome, seizure disorder, affective disorder, and a personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry ten pounds frequently. The claimant can stand and/or walk for at least two hours in an eight hour workday and sit for about six hours in an eight hour workday. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. The claimant should avoid exposure to hazards. The claimant is limited to simple, repetitive tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on ▬▬▬▬, 1969[2] and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

---

[2] The actual date of birth is redacted in accordance with Western District of Washington Local Rule CR 5.2.

supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2004 through the date of this decision.

AR at 17-29.

## VII. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in finding at step two that Plaintiff has no additional medical impairments beyond the resolved Guillain-Barre syndrome to justify her pain complaints.

2. Whether the ALJ erred in rejecting the treating and examining physicians' opinions about the severity of Plaintiff's impairments.

3. Whether the ALJ erred in finding at step three that Plaintiff's medical conditions did not meet or equal a listing, even for a closed period.

4. Whether the ALJ erred in disregarding the Plaintiff's subjective testimony of pain and limitation.

Dkt. Nos. 15, 16.

## VIII. DISCUSSION

A. <u>The ALJ Erred in His Evaluation of the Medical Evidence</u>.

*1. Standard of Review for Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

*Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2. *The ALJ's Treatment of Opinions Regarding a Nerve Disorder*

Della Williams, M.D., examined Plaintiff on several occasions in January and February 2006. Dr. Williams assessed Plaintiff with "chronic neuropathy," AR at 750, "peripheral neuropathy," AR at 747, and "possible worsening Guillain-Barre," AR at 743.[3] In addition, Dr. Williams had a nerve conduction study performed on Plaintiff, and thereafter she assessed Plaintiff with "peripheral neuropathy, characteristics not totally known but not totally compatible with a diagnosis of Guillain-Barre." AR at 741. On April 3, 2006, Devakumarian Kumar, M.D., another doctor at the hospital, diagnosed Plaintiff with a sensory deficit in both of her lower extremities. AR at 736-37.

Barbara Distad, M.D., examined Plaintiff in June 2006 and noted that Plaintiff could be having a recurrence of Guillain-Barre symptoms. AR at 528. Dr. Distad also observed that Plaintiff has "clinical as well as electrodiagnostic evidence of a peripheral neuropathy." AR at 526. Dr. Distad had a nerve biopsy performed on Plaintiff, which indicated a "neuropathic process." AR at 828. Dr. Distad also reviewed results from the prior nerve conduction study and determined that Plaintiff has "sensorimotor polyneuropathy which appeared to be chronic." AR at 827.

Patti Brettell, M.D., examined Plaintiff in May 2007 and noted that Plaintiff "appears to have a worsening of her lower extremity symptoms." AR at 725. Dr. Brettell noted that Plaintiff showed "absent sensation it the lower extremities," and ordered more nerve conduction testing to be performed. AR at 724-25. Dr. Brettell saw Plaintiff again in August 2007 after the nerve conduction testing had been performed. AR at 719-21. Dr. Brettell noted that the nerve conduction studies suggested decreased amplitude of several nerves. AR at 719. Zeljka Chobanov, M.D., reviewed the nerve conduction testing results and found "electrical

---

[3] In April/May 2004, Plaintiff contracted Guillain-Barre syndrome, an acute autoimmune disorder affecting the peripheral nervous system. AR at 288. As a result of the Guillain-Barre syndrome, Plaintiff experienced temporary paralysis. She was hospitalized for a period of time, and also underwent inpatient rehabilitation and physical therapy.

evidence to suggest the presence of a generalized, length dependent, axonal sensory polyneuropathy." AR at 754. On March 11, 2008, Dr. Brettell diagnosed Plaintiff with, among other things, Guillain-Barre syndrome, peripheral neuropathy and paresthesia of the lower extremities. AR at 801-02. In addition, Dr. Brettell noted that Plaintiff had "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" in the form of "tremor or other involuntary disturbances" and "sensory disturbances (any or all of which may be due to . . . peripheral nerve dysfunction)." *Id.*

On June 18, 2007, John Holroyd, M.D., Plaintiff's primary care physician, opined that, following an earlier acute phase of Guillain-Barre syndrome, Plaintiff "has been left with significant chronic nerve impairment." AR at 584. Dr. Holroyd noted that the nerve impairment primarily affects Plaintiff's lower extremities, resulting in chronic pain and numbness in her legs and feet. *Id.* Dr. Holroyd also observed that while Plaintiff's most serious symptoms "wax and wane," they had largely been steady over the last several months. *Id.* Moreover, on March 11, 2008, Dr. Holroyd opined that Plaintiff had "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" in the form of "ataxia and sensory disturbances (any or all of which may be due to . . . peripheral nerve dysfunction)." AR at 797-98.

In addition, Lew Myers, M.D., who was the medical expert at the administrative hearing, noted Plaintiff's medical record indicates that her nerve sensation would at times be intact and at other times be absent, and stated that "[t]here is no doubt that [Plaintiff] did initially have Guillain-Barre, which affected her nerves." AR at 913-14. Dr. Myers also testified that Plaintiff's present neurological symptoms "may relate to a persistent sensory polyneuropathy resulting in Guillain-Barre syndrome." AR at 914.

REPORT AND RECOMMENDATION
PAGE - 9

The ALJ disregarded the above medical opinions concerning an ongoing nerve disorder apart from Plaintiff's earlier acute phase of Guillain-Barre syndrome. The ALJ stated that "there is no objective evidence to establish an additional associated nerve impairment that could cause her pain," AR at 19, and again that "there is no objective medical evidence to support an additional impairment to explain the claimant's pain complaints," AR at 20. While the ALJ later purported to consider Dr. Holroyd's opinions, he dismissed them in cursory fashion. AR at 24. This was error. On remand, the ALJ is directed to consider and properly evaluate the relevant medical opinions concerning an ongoing nerve disorder apart from Plaintiff's earlier acute phase of Guillain-Barre syndrome in accordance with the hierarchy of medical evidence.

### 3. *The ALJ's Treatment of Opinions Regarding Severity*

Heidi Collins, M.D., examined Plaintiff in June 2004 and diagnosed Plaintiff with, among other things, Guillain-Barre syndrome and neuropathic pain, each with an assessed severity level of five. AR at 208. Dr. Collins opined that Plaintiff's exertional level was severely limited, meaning that Plaintiff was unable to lift two pounds or unable to stand or walk. AR at 209. Dr. Collins further opined that Plaintiff should not be employed so that she could devote her energy to caring for her children. *Id.* Dr. Collins also stated that Plaintiff could not work at least half-time for more than a year, and that she could not determine when Plaintiff could return to work. *Id.*

Eric Smith, M.D., examined Plaintiff in January 2006 and diagnosed Plaintiff with "chronic Guillain-Barre" and opined that her overall work level was "severely limited." AR at 519. Dr. Smith recommended to Plaintiff that she file for Social Security benefits, AR at 520, and he also communicated to Dr. Holroyd that "she certainly has . . . significant disability," and "I think whatever we can do to help her get on Social Security Disability would be to her benefit," AR at 523. Dr. Smith prepared a written report, in which he noted "significant residua from Guillain-Barre with diagnosis of chronicity," which he observed appeared

consistent with her story. AR at 524-25. Dr. Smith stated in his report that he would also "[recommend] this individual, with the chronicity of her condition and obvious significant impairment as documented here and in the chart records, file for Social Security Disability." AR at 525. He gave his assessed chronic Guillain-Barre impairment a severity rating of five, which means an inability to perform one or more basic work-related activities. AR at 519, 525. Dr. Smith stated that her affected work activities would be standing, walking, lifting, handling and carrying. AR at 525.

On March 11, 2008, Dr. Holroyd opined that Plaintiff's nerve condition imposed marked restrictions on her daily activities, and resulted in frequent deficiencies of concentration, persistence or pace. AR at 797-98. Dr. Brettell also opined on March 11, 2008, that Plaintiff's nerve condition resulted in frequent deficiencies of concentration, persistence or pace. AR at 801-02.

The ALJ gave little weight to these opinions, asserting that they were either not supported by objective medical evidence or that "there is no predicate for the pain and fatigue of the levels alleged by these opinion issuers." AR at 24, 25. However, as indicated in section VIII.A.2. above, this was error. On remand, the ALJ is directed to properly evaluate the opinions concerning the severity of Plaintiff's impairments in accordance with the hierarchy of medical evidence. In considering whether Plaintiff's medical impairments are severe, the ALJ shall determine whether her impairments more than minimally affect her ability to perform basic work activities. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). In addition, the ALJ is directed to reevaluate whether Plaintiff's impairments, specifically, Plaintiff's earlier acute phase of Guillain-Barre syndrome and the ongoing nerve disorder, meet or equal a listing, including for a closed period. To that end, the ALJ shall assess the degree to which the impairments "interfere[] with locomotion and/or interfere[] with the use of fingers, hands and arms." *See* 20 C.F.R. Part 404, Subpart P, App. 1, 11.14, 11.04B, 11.00C.

B. The ALJ Erred in His Evaluation of Plaintiff's Testimony.

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p (1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ erred in his adverse credibility assessment of Plaintiff's testimony. The ALJ discounted Plaintiff's testimony, stating several times that she has engaged in a "wide range of activities," including traveling on two occasions and temporarily helping to care for her mother. AR at 23, 24, 26. However, the fact that Plaintiff can perform some basic daily activities for a few hours each week "does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled."

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (internal quotation marks omitted). In order to discredit a claimant's testimony about the severity of her symptoms based on the claimant's daily activities, the ALJ must find that the claimant "is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (internal quotation marks omitted). That Plaintiff can perform some basic daily activities is not inconsistent with a determination that she is unable to work. Moreover, regarding Plaintiff's two trips, there is no evidence in the record that during those trips Plaintiff "spen[t] a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id.* The mere fact that Plaintiff took these two trips, without more, does not provide a sufficient basis for the ALJ to have discredited her testimony concerning the severity of her symptoms. Further, there is no evidence concerning what sort of care Plaintiff provided to her mother when Plaintiff traveled to Alabama. On remand, the ALJ is directed to properly evaluate Plaintiff's credibility according to the standards above, and to elicit further testimony from Plaintiff about her daily activities and her activities on her two trips, as needed.

## IX. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings not inconsistent with this Report and Recommendation. A proposed Order accompanies this Report and Recommendation.

DATED this 10th day of November, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13